CANCORA MARINA, INC., demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-82-464      *Resuelto:* 29 de abril de 1983

*Eddie Ramírez Vale* y *Luis E. Vázquez Santos,* abogados de la recurrente; *Miguel Pagán, Procurador General Interino,* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados del Secretario de Hacienda; *Ramón Morán Loubriel* como *amicus curiae.*

PER CURIAM: En procedimiento de expropiación forzosa seguido por el Estado contra una finca propiedad de la demandante, ésta retiró en 1966 la suma de $75,400 depositada como estimado de justa compensación y la reinvirtió ese mismo año, lo cual informó en su planilla de contribución sobre ingresos, que le fue aceptada por el Secretario de Hacienda. La contribuyente no solicitó prórroga para reinvertir la compensación adicional que estaba reclamando. Por sentencia notificada el 22 de octubre de 1969 le fue adjudicada una compensación adicional de $188,939.12, que también reinvirtió según escritura de compraventa otorgada el 3 de noviembre de 1970, dentro del año siguiente al "primer año contributivo en que cualquier parte de la ganancia en la conversión sea realizada" a tenor de la Sec. 112 de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3112), que en lo pertinente dispone:

(f) *Conversiones Involuntarias.—* Si la propiedad, como resultado de su destrucción en todo o en parte, robo, incautación o del ejercicio de poder de requisición o expropiación forzosa o de la amenaza o inminencia de ello, fuere compulsoria o involuntariamente convertida.—

(1) .       .       .       .       .       .       .       .

(2) .       .       .       .       .       .       .       .

(A) No Reconocimiento de Ganancia.— Si el contribuyente, durante el período prescrito en el inciso (B), con el fin de reponer la propiedad de ese modo convertida, comprare otra propiedad localizada en Puerto Rico similar o relacionada en servicio o en uso con la propiedad de ese modo convertida . . . a opción del contribuyente, la ganancia será reconocida solamente hasta el monto en que la cantidad realizada en dicha conversión (sin considerar si dicha cantidad es recibida en uno o más años contributivos) excediere del costo de dicha otra propiedad, acciones, u obligaciones. Dicha opción se ejercitará en el tiempo y en la forma que el Secretario mediante reglamentos prescriba.

.       .       .       .       .       .       .       .

(B) Período Dentro del Cual la Propiedad Deberá Ser Repuesta.— El período a que se refiere el inciso (A) será el período que comience con la fecha de la disposición de la propiedad convertida, o con la fecha más temprana de la amenaza o inminencia de requisición o expropiación de la propiedad convertida, cualquiera de estas fechas que sea la anterior, y que termine—

(i) un año después del cierre del primer año contributivo en que cualquier parte de la ganancia en la conversión sea realizada, o

(ii) sujeto a los términos y condiciones que el Secretario especifique, en aquella fecha posterior que el Secretario fije previa solicitud del contribuyente. Tal solicitud será hecha en el tiempo y en la forma que el Secretario mediante reglamentos prescriba.

La contribuyente no incluyó la compensación adicional en su planilla de 1969 ni en la de 1970 bajo el supuesto de que habiendo reinvertido, no venía obligada a declarar este ingreso. El Secretario de Hacienda le notificó deficiencia en

la planilla de 1969 fundado en que la recurrente había perdido su opción de reinvertir en 1970 esta segunda parte de la compensación, por no haber obtenido *prórroga* del plazo ad hoc en 1966, año en que realizó la primera parte de la ganancia. La contribuyente impugnó la deficiencia, y el Tribunal Superior falló a favor de Hacienda y sostuvo la deficiencia. Expedimos auto de revisión y el caso quedó sometido finalmente el 1° de marzo de 1983.

■ El diferimiento del concepto y concreción de "ganancia realizada" hasta que la corte dicta *sentencia final* en el pleito de expropiación por la que fija el precio del inmueble expropiado (*Iriarte Miró* v. *Srio. de Hacienda*, 84 D.P.R. 171, 175, 179 (1961)) es lo que permite el otorgamiento pleno de este alivio, que "sin considerar si [la] cantidad es recibida en uno o más años contributivos" se extiende hasta su equiparación con el costo de la nueva propiedad adquirida. Es de todo punto indispensable conocer la compensación final por sentencia para que pueda el contribuyente disfrutar el no reconocimiento de ganancia, pues solo con esa información previa estará en condición de invertir en una propiedad cuyo costo absorba la ganancia. No podrá hablar de precio con su vendedor hasta que sepa con qué dinero cuenta.

■ Toda vez que la realización de la ganancia en su totalidad no se concreta hasta dictada sentencia final, y que el pago y depósito de la compensación estimada es "*provisional*" (*Iriarte Miró*, supra, pág. 175); que el "principio general por el cual se requiere que se determine la base sobre la cual ha de computarse el ingreso obtenido en la disposición de propiedad, es el de tributar la ganancia habida una sola vez" (*Iriarte Miró*, supra, pág. 180), la Ley no contempla la desintegración del evento contributivo en las dos etapas que deslinda la sentencia revisada, primera, el depósito por el expropiante y retiro por el contribuyente en 1966 de la compensación estimada en $75,400; segunda, adjudicación por sentencia final en 1969 de la compensación

adicional por $188,939.12. Como el contribuyente realizó una ganancia en 1966 al disponer de la suma consignada, la transacción en cuanto a *ese* pago se considera cerrada y hasta el monto que representa una ganancia es tributable cuando se recibe, *Olazábal* v. *Srio de Hacienda*, 90 D.P.R. 601, 604 (1964). (¹) No por eso se interrumpe o anula el derecho del contribuyente al alivio completo que representa la reinversión de la totalidad de la cantidad *realizada* que habrá de determinarse por sentencia, ni hay solución de continuidad que requiera una solicitud de prórroga del período dentro del cual la propiedad deberá ser repuesta. La solicitud de prórroga es requisito exigible una vez que conocido el importe total de la compensación (²) adjudicada por sentencia u otro medio, necesite el contribuyente más tiempo que el de "un año después del cierre del primer año contributivo en que *cualquier parte* de la ganancia en la conversión sea *realizada* . . ." (Sec. 112(B)(i), supra) para concertar la reinversión. (Énfasis nuestro.)

La acción de la recurrente al reinvertir *parte* de la ganancia cuando la *realizó* por consignación en 1966 y la otra parte cuando la realizó en 1969 por sentencia, simplemente siguió lo ordenado en la Ley, que específicamente provee para este caso en dicha Sec. 112(A) al reglar que el no reconocimiento de ganancia de la cantidad realizada en la conversión involuntaria procede "sin considerar si dicha cantidad es recibida *en uno o más años contributivos*". La recurrente opera bajo el sistema de "incurrido-devengado" (*accrual*) y es claro que ella no tuvo acción, ni derecho, ni disposición de la *parte* de ganancia por compensación adi-

---

(¹) Citando de J. Mertens, Jr., *The Law of Federal Income Taxation*, Chicago, Callaghan and Co., 1961, Vol. 2, Sec. 12.65, págs. 182–183. (En la edición de 1967, pág. 239.)

(²) Aparte de la dificultad que plantea solicitar prórroga, mediante prestación de fianza, para reinvertir algo tan indefinible e inasible como lo que se obtenga en un pleito, exigir tal prórroga 3 años antes de conocerse el resultado va contra el principio general de pago al corriente de nuestra Ley de Contribuciones sobre Ingresos.

cional antes del año 1969 en que se dictó sentencia final en el pleito de expropiación. Ella no ha tomado la compensación adicional —según le atribuye la sentencia recurrida— como evento tributable independiente de la expropiación y del pago inicial de 1966. Por el contrario, su posición está acorde con el estatuto que identifica la imponibilidad con el momento de *realización* de la ganancia aun cuando dicho evento se desplace por distintos años. En fin, se trata de un solo evento que tributa en dos partes. No hay que hacer derroche de liberalidad para llegar a estas conclusiones, mas en todo caso la interpretación liberal del citado artículo es la indicada en vista de que el contribuyente viene sujeto a tributo sobre una ganancia que no ha buscado, a la que ha sido llevado involuntariamente; y que el remedio de no reconocimiento de la misma se extiende hasta restaurar su patrimonio intervenido a la situación original alterada por la expropiación. Estaría reñido con este propósito y con la realidad práctica del proceso contributivo resolver que la *primera* ganancia realizada establece el punto de prescripción para toda la que se realice posteriormente. Contrario a *Feinberg* v. *C.I.R.*, 377 F.2d 21 (1967), y *Conlorez Corp.* v. *Commissioner*, 51 T.C. 467 (1968), cuyos razonamientos no persuaden, el período para ejercitar la opción de no reconocimiento de ganancia se *renueva* con cada realización de la misma hasta "un año después del cierre del primer año contributivo *en que cualquier parte de la ganancia* en la conversión sea realizada" (Sec. 112(B)(i)); y la prórroga por el Secretario también debe estar disponible para cada una de las realizaciones de ganancia. Agota la imaginación la otra alternativa, que obligaría a solicitar prórroga para reinvertir lo desconocido, y aun lo inexistente, pues quien depende de una acción judicial para concretar su derecho a compensación adicional carece de recurso a la previsibilidad para anticipar la adjudicación final. El orden racional de operación de este alivio contributivo dicta que cuando se divide en partes la

cantidad realizada, cada parte tenga el mismo grado de beneficio hasta cumplir el propósito legislativo de una reposición *total* de la propiedad afectada. No puede ser otra la intención si la expropiación forzosa, en su consecuencia de lesión a la propiedad privada, se mezcla y confunde en dicha Sec. 112 —en sus incisos (f)(4) sobre *definiciones*, y (f) sobre conversiones involuntarias— con sucesos catastróficos como "destrucción, robo, incautación, requisición . . .".

Hay que atribuir siempre a la ley el sentido que mejor responda a la realización del resultado que por ella se quiere obtener y evitar situaciones injustas y onerosas para los contribuyentes. *García Commercial* v. *Srio. de Hacienda*, 80 D.P.R. 765, 774 (1958). El propio texto de la ley muestra el propósito de "librar lo más posible" al contribuyente del impacto lesivo de la expropiación. *Cf. Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 57, 60 (1947).

■ Es norma asentada en nuestra jurisprudencia que todo conflicto, aparente o real, entre disposiciones de un mismo estatuto será resuelto para beneficio del propósito legislativo en su integridad y en armonía con el más eficaz cumplimiento y pleno efecto del mismo. "Nuestra obligación fundamental, en estos casos, es la de imprimirle efectividad a la intención legislativa, aun hasta el punto de sustituir o eliminar judicialmente alguna frase específica estatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surja de la totalidad de la ley, ya que, en esos casos, debe prevalecer la manifiesta intención del legislador sobre la disposición literal del estatuto que esté en conflicto con esa intención." *Roig Commercial Bank* v. *Buscaglia, Tes.*, 74 D.P.R. 986, 997–998 (1953); seguido en *Calaf* v. *Sec. Hacienda*, 76 D.P.R. 577, 584 (1954); *Descartes, Tes.* v. *Tribl. Contrib. y Sucn. Cautiño*, 71 D.P.R. 248, 253 (1950).

Concluimos, por tanto, que la compensación adicional de $188,939.12 recibida por la contribuyente en virtud de sen-

tencia de 1969 no ha de ser tratada como ganancia tributable.

*Se revocará la sentencia revisada.*

Los Jueces Asociados Señores Dávila, Torres Rigual y Rebollo López no intervinieron.