Cordero, Juez Ponente
*783 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes solicitaron revisión ante el Tribunal de Primera Instancia de una Resolución emitida por el Panel Independiente de Arbitraje ("PIA"). El Tribunal de Primera Instancia (Hon. Wilfredo Alicea López), declaró Sin Lugar los recursos de revisión y ratificó la decisión del PIA. Inconforme, los apelantes recurren ante nos y citan como errores que el tribunal recurrido se equivocó al ratificar como correcta la decisión del PÍA y al sostener la validez de los delegados suplentes como sustitutos de los delegados impugnados.
Señalamos a continuación un resumen de los hechos.
Mediante disposición de la Ley Núm. 133 de 28 de junio de 1966, 3 L.P.R.A. 862 et seq., según enmendada, se creó la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, en adelante "La Asociación". La Asociación, por mandato de la Ley Núm. 133, es responsable de gobernarse mediante una Asamblea de Delegados, los cuales son electos por los propios miembros de la Asociación. 3 L.P.R.A. sec. 862d.
El día 22 de abril de 1995, se celebraron elecciones para delegados. Los apelantes Juan Rosario Mercado ("Rosario"), Carmen E. Cruz Díaz ("Cruz") y Morayma González Gómez ("González"), oportunamente, impugnaron el resultado de las elecciones ante el PIA y simultáneamente ante el Sub-Comité de Impugnación de la Asociación ("el Sub-Comité"). Rosario, Cruz y González, en síntesis, cuestionaron la elegibilidad de ciertos candidatos que salieron electos, por alegadamente haber éstos servido como delegados ante la Asamblea por dos (2) términos consecutivos, según definido ese término por disposiciones de ley.
El Sub-Comité declaró Con Lugar la impugnación en cuanto a uno de los delegados por haber éste completado dos (2) términos consecutivos, pero declaró Sin Lugar la impugnación de los otros delegados porque éstos habían renunciado antes de las elecciones y no estaban actuando como delegados "al momento de la elección". Luego los casos fueron consolidados ante el PIA, y ésta ordenó dejar sin efecto la certificación de dos (2) otros delegados electos, Angel M. Duprey Pérez ("Duprey") y Luis R. García de la Noceda ("García"). Inconforme, los apelantes presentaron dos Recursos de Revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan, quien consolidó los casos y confirmó la Resolución recurrida por el PIA; de dicha denegatoria ahora apelan ante nos alegando que Duprey y García deberían permanecer como delegados electos.
En síntesis, arguyen los apelantes que el Tribunal de Primera Instancia y el PIA cometieron error en la interpretación de lo que constituye la frase "dos términos consecutivos". Los apelantes también entienden que no se le dio la debida deferencia a la resolución del Sub-Comité, quien interpretó que se "...prohíbe la candidatura de un empleado o ex-empleado que 'al momento de la elección' haya estado actuando como delegado por dos términos consecutivos de cuatro años".
II
El Sub-Comité resolvió basándose en las disposiciones de la Ley Núm. 133, pero sin considerar correctamente la enmienda a dicha ley, o sea, la Ley Núm. 142 de 21 de diciembre de 1994, 3 L.P.R.A. 862d (Suplemento de 1996) y resolvió, además, a base del Artículo 8 del Reglamento de la Asamblea de Delegados de la Asociación. Veamos.
En sus conclusiones de derecho, el Sub-Comité utilizó el Artículo 5(a) de la Ley Núm. 133, según enmendada por la Ley Núm. 142 de 21 de diciembre de 1994, 3 L.P.R.A. 862d, o sea, la parte que dispone:

*784
"Los delegados de la actual Asamblea que hubiesen completado su segundo término conforme a la ley actual no podrán ser candidatos en las elecciones del mes de marzo de 1995 y hasta concluido el término de cuatro (4) años de la nueva Asamblea."

Además, para apoyar su posición, el Sub-Comité utilizó el Artículo 8 del Reglamento de la Asamblea de Delegados que en su parte pertinente indica:
"Sin embargo no podrá ser candidato el empleado o ex-empleado acogido al seguro por muerte que al momento de la elección haya estado actuando como delegado por dos términos consecutivos de cuatro (4) años."
A base de los citados artículos, el Sub-Comité concluyó que, salvo la posición de un delegado que fue debidamente descalificado, la impugnación de los delegados electos era improcedente.
Inconforme los delegados suplentes, aquí recurridos, Rosario, Cruz y González, argüyeron ante el PIA que el citado Artículo 8 del Reglamento de la Asamblea de Delegados, aprobado el 3 de febrero de 1995, es nulo porque adiciona un requisito no contemplado en la ley. O sea, que el Artículo 8 del Reglamento incluyó la frase "... que al momento de la elección haya estado actuando como delegado por dos (2) términos consecutivos de cuatro (4) años...", mientras que la Ley Núm. 133, según enmendada, sólo dispone como único requisito que los delegados que hubiesen completado su segundo término, conforme a la ley, no podrán ser candidatos en las elecciones.
En su decisión bien fundamentada, el PIA resolvió que aquel delegado que ocupó el cargo por más de la mitad del segundo término, quedaba impedido para postular y ser elegido como delegado nuevamente. Basó su resolución luego del análisis que hizo de otra sección del mismo Artículo 5(a) de la Ley Núm. 133 y a base del análisis que hizo del Artículo 8 del Reglamento y el Artículo IV del Procedimiento Uniforme de Elección de Delegados.
La parte del Artículo 5(a) de la Ley Núm. 133, según enmendada, citada por el PIA dispone:

"Ningún empleado podrá ser electo por más de dos términos consecutivos como miembro de la Asamblea de Delegados. La parte de un término que sirva un delegado suplente como sustituto de un delegado en propiedad, no se considerará como un término siempre y cuando la sustitución ocurra pasada la mitad del término que un delegado en propiedad ocupaba."

Por su parte, el Artículo IV del Procedimiento Uniforme de Elección de Delegados lee:

"IV. Quienes Pueden Ser Candidatos a Elección

Tiene derecho a ser candidato a elección todo empleado que sea socio de la Asociación, según se indica en el apartado anterior, excepto que haya cumplido dos (2) términos consecutivos como delegado a la Asamblea, en cuyo caso no puede ser reelecto para un tercer término consecutivo. La parte de un término que sirva un delegado suplente no se considerará como un término, siempre y cuando la sustitución ocurra pasada la mitad del término que el delegado en propiedad ocupaba. Ningún Jefe de Agencia, Miembro del Comité Organizador de las Elecciones o Miembro del Sub-Comité de Votación y Escrutinio o del Sub-Comité de Impugnaciones, podrá ser candidato a delegado."

El PIA concluyó que aquel delegado que ocupó el cargo por más de la mitad del segundo término, quedaba impedido para postularse y no podía ser elegido como delegado nuevamente. De resolver lo contrario, razonó el PIA, tendría el efecto neto de burlar la intención de la ley, ya que recurriendo al método de ser sustituido por el suplente en los últimos meses del segundo término, ello sería la excusa para sistemáticamente postularse como delegado a perpetuidad. A base de tal resolución, el PIA descalificó a dos más de los delegados electos, o sea, a García y a Duprey.
Inconformes los aquí apelantes, oportunamente, presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, recursos de Revisión, por separado, (Civil Núm. KAC- 9-60506 (803) y Civil Núm. KAC-96-0508 (803)), los cuales fueron consolidados. El Tribunal de Primera Instancia *785 resolvió, en síntesis, que no procedía la revocación de la decisión del PIA por ser la misma conforme a derecho. De esa sentencia, recurre ante nos la parte apelante.
Nos corresponde, en esencia, resolver si los delegados electos, García y Duprey, no podían ser candidatos a delegados por haber éstos servido como delegados consecutivos por más de la mitad de su segundo término. Resolvemos, al igual que el PIA y el tribunal recurrido, que García y Duprey no podían ser candidatos para un tercer término consecutivo, razón por lo cual éstos deberán ser descalificados como delegados electos.
III
Los apelantes arguyen que el foro recurrido erró al confirmar el PIA, y no al Sub-Comité, y que el tribunal no le dio la debida deferencia a la interpretación de dicho Sub-Comité. El Sub-Comité resolvió que todo empleado o ex-empleado podía ser candidato, excepto aquél que "al momento de la elección" no haya estado actuando como delegado por dos (2) términos consecutivos. Como señalamos anteriormente, el Sub-Comité resolvió que si al momento de la elección el candidato no estaba actuando como delegado por dos términos consecutivos, entonces podía ser candidato. Se entiende que esa decisión le da el privilegio al delegado de renunciar como delegado, e.g., por uno, dos o más días antes de la elección y en esa forma perpetuar su posición como delegado. Dicha interpretación del Sub-Comité es claramente errónea, y no puede prevalecer. La clara intención de la ley de evitar que un delegado perpetúe su posición, debe ser respetada y no obviada; el Sub-Comité no tiene poder para obviar las consecuencias de la ley. Está claro que el Artículo 8 del Reglamento de la Asamblea de Delegados, el cual el Sub-Comité enfatizó para llegar a su conclusión, no tiene el apoyo de una base estatutaria para sostener lo reglamentado de que "...al momento de la elección haya estado actuando como delegado por dos términos consecutivos de cuatro (4) años". Por lo tanto, dicho Artículo 8 del Reglamento de la Asamblea de Delegados es nulo.
Además, olvidó el Sub-Comité que las leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira, y no se deben desvincular del problema humano cuya solución perseguía. Morales v. Adm. Sistemas dq Retiro, 123 D.P.R. 589, 595 (1989). Las agencias cuasi-judiciales al igual que los tribunales, están bajo la obligación de desentrañar y hacer que prevalezca el propósito legislativo y deben evitar la interpretación de un estatuto que pueda conducir a resultados irrazonables o absurdos; Díaz Marín v. Mun. de San Juan, 117 D.P.R. 334, 342 (1986); y cuando las leyes están en conflicto, es obligación fundamental imprimirle efectividad a la manifiesta intención legislativa, y se debe'interpretar el estatuto de tal manera que prevalezca el objetivo del legislador sobre la disposición literal de aquella ley que esté en conflicto con la meta legislativa. Id. "La interpretación judicial debe propiciar la realización del verdadero propósito de la ley" Id.; citando a E. R. Bemier, Aprobación e interpretación de las leyes en Puerto Rico, San Juan, Colegio de Abogados, 1963, Cap. XLVIII, pág. 230; Roig Commercial Bank v. Buscaglia, Tes., 74 D.P.R. 986, 997-998 (1953). "No debe prevalecer el lapso o la inadvertencia al legislar sobre la idea central que dio vida al estatuto"; Díaz Marín, supra, pág. 343, citando Calaf v. Sec. Hacienda, 76 D.P.R. 577, 583 (1954). El tribunal apelativo está bajo la obligación fundamental de hacer cumplir la intención legislativa, aun hasta el punto de sustituir, alterar o eliminar judicialmente alguna frase específica estatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surja de la totalidad de la ley. Roig Commercial Bank, supra, págs. 997-998. Véase, además, los Artículos 17-19 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 17-19.
Antes de ser enmendada la Ley Núm. 133 por la Ley Núm. 142 de 1994, el artículo relevante disponía:

"Ningún empleado podrá ser electo por más de dos (2) términos consecutivos como miembro de la Asamblea de Delegados. La parte de un término que sirva un delegado suplente como sustituto de un delegado en propiedad no se considerará como un término."

Ahora bien, esa disposición de ley quedó enmendada por la Ley Núm. 142 de 1994 como sigue:
"Ningún empleado podrá ser electo por más de dos términos consecutivos como miembro de la Asamblea de Delegados. La parte de un término que sirva un delegado suplente como sustituto de un *786 delegado en propiedad no se considerará como un término siempre y cuando la sustitución ocurra \ pasada la mitad del término que el delegado en propiedad ocupaba." (Subrayado nuestro.)
3 L.P.R.A. 862d (Suplemento de 1996).
Sin embargo, la antes subrayada frase, hasta cierto punto, conflije con lo dicho en el mismo artículo de ley enmendada:

"Los delegados de la actual Asamblea que hubiesen completado su segundo término, conforme a la ley actual, no podrán ser candidatos en las elecciones del mes de marzo de 1995 y hasta concluido el término de cuatro (4) años de la nueva Asamblea."

Por un lado, la ley le prohibe al empleado ser electo por más de dos términos consecutivos, y por otro lado, la misma ley dice que los delegados "suplentes" que hubiesen completado más de la mitad del término que el delegado en propiedad ocupaba, será contado como un término completo si dicho delegado suplente desea ser candidato a delegado.
Dicho en otra forma, si un delegado es sustituido por un suplente por más de dos (2) años de los cuatro (4) años, ese término le cuenta al suplente como un término de cuatro (4) años completo, si éste desea ser candidato a delegado de la Asamblea. Siendo esto así, es lógico y razonable interpretar la ley para entender que si un delegado electo sirve por menos de la mitad de su segundo término, entonces éste puede ser candidato a delegado, y el término de menos de dos años, no le contará como un término completado. Sería irrazonable e ilógico concluir que un suplente que sirve como delegado por más de la mitad del término (dos años), se le cuenta como un término completo, mientras que a un delegado electo que sirve por más de la mitad del término (dos años), no se le cuenta como un térmiho completo. O sea, según la interpretación del Sub-Comité, se le debe contar como tiempo completo al delegado suplente que desea ser candidato, si éste ha servido por más de la mitad del término de cuatro (4) años. Sin embargo, el Sub-Comité concluyó que no se le debe contar como término completo al delegado electo que haya servido e.g. por cuatro (4) años menos un día, si "al momento de la elección" ya había renunciado. Tal interpretación carece de sentido lógico y razonable y es contraria a la intención legislativa. Sabido es que las interpretaciones que las agencias hagan de sus propias facultades, merecen gran deferencia, pero únicamente cuando su análisis de la ley es razonable y consistente con el propósito legislativo. Mangual Vélez y Otros v. Comisión Estatal de Elecciones, _ D.P.R. _ (21 de septiembre de 1997), 95 J.T.S. 121, pág. 66; Colón Ventura v. Méndez, _ D.P.R. _ (5 de mayo de 1992), 92 J.T.S. 51, pág. 9454; Vázquez v. A.R.P.E., _ D.P.R. _ (13 de junio de 1991), 91 J.T.S. 53, pág. 8657. En el caso ante nos, el análisis de la ley hecho por el Sub-Comité lo llevó a una conclusión irrazonable, sin considerar el propósito legislativo. El Sub-Comité pasó por alto el evidente lapso legislativo al hacer su estudio de la ley y al llegar a sus conclusiones. Siendo esto así, no pudo apreciar que un lapso del legislador no debe prevalecer o usarse para derrotar el propósito principal del estatuto. Díaz Marín, supra, pág. 343.
Constituye un principio cardinal de hermenéutica el que la interpretación de una disposición específica de una ley requiere que se considere el estatuto en su totalidad, como parte de un todo coherente y armonioso. Zambrana Maldonado v. Estado Libre Asociado de P.R., _ D.P.R. _ (1992), 92 J.T.S. 12, pág. 9171. La ley en cuestión debe ser examinada y comparada en sus partes, de modo que se hagan consistentes y surtan efecto. Id. A tales fines, deben interpretarse las distintas disposiciones o secciones del estatuto, las unas en relación con las otras. Id. Al examinar un estatuto, el juzgador está obligado a armonizar, en lo posible, todas las disposiciones del estatuto a los fines de lograr un resultado sensato, lógico y razonable. Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados, _ D.P.R. _ (1992), 92 J.T.S. 137, pág. 10017. Los estatutos deben ser interpretados y aplicados conforme al propósito social que los inspira, sin desvincularlos de la realidad y el problema humano que pretenden resolver. Id.; Pueblo v. Pizarro Solís, _ D.P.R. _ (1992), 92 J.T.S. 10, pág. 9154. Véase, además, García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 208-209 (1988).
Nuestra interpretación también tiene apoyo por vía de la Ley Núm. 123 de 11 de agosto de 1996, \ cuya ley nuevamente enmendó la Ley Núm. 133, y en la cual en su Exposición de Motivos expoñe ; claramente: •
*787 "Esta Asamblea Legislativa también se ha percatado sobre la necesidad de aclarar el Artículo 5(a) de la Ley Núm. 133 a los efectos de que el término por el cual puede ser electo un delegado a la Asamblea, es aquél de más del cincuenta porciento o fracción en exceso del tiempo que transcurre desde la fecha de la elección en la agencia hasta la celebración de las próximas elecciones y que un delegado no puede ser reelecto por más de dos (2) períodos consecutivos sin importar que rama de gobierno o sector represente." (Énfasis nuestro.)
Mediante la enmienda aclaratoria, el Artículo 5(a) de la Ley Núm. 133 queda enmendado para leer de la siguiente forma:

"Ningún empleado podrá ser electo por más de dos términos consecutivos como miembro de la Asamblea de Delegados. Un término es aquél equivalente a más del cincuenta porciento o fracción en exceso del tiempo que transcurre desde la fecha de la elección en la agencia hasta la celebración de las próximas elecciones independientemente de la rama de gobierno, municipio o sector sobre el cual hubiese sido electo. La parte de un término que sirva un delegado suplente como sustituto de un delegado en propiedad, no se considerará como un término siempre y cuando la sustitución ocurra pasada la mitad del término que el delegado en propiedad ocupaba."

Concluimos que esta aclaración tiene aplicación al caso ante nos, pues confirma la interpretación que el PIA, el Tribunal de Primera Instancia y ahora este Tribunal, le ha dado al Artículo 5(a) de la Ley Núm. 133, al tiempo de elecciones aquí discutidas. Pero, aun si se entendiese que Ley Núm. 133 no era una aclaración, debemos recordar que la razonabilidad de un estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva; mientras más grave sea el mal social que el estatuto intenta remediar, más grande es el interés público envuelto y, por lo tanto, mayor justificación para su aplicación retroactiva. Vélez v. Srio. de Justicia, 115 D.P.R. 533, 542 (1984); Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 396 (1973). Aun si existiera un conflicto irreconciliable entre una nueva disposición y estatutos previos de igual rango referentes a la misma materia, la nueva disposición será la que controle o prevalezca, ya que constituye la última expresión de la legislatura. Díaz v. Srio. de Hacienda, 114 D.P.R. 865,874 (1983); J.G. Sutherland, Statutes and Statutory Construction, 3ra ed., Chicago, Callaghan and Company, 1943, Vol. 2, Sec. 5201, pág. 532.
IV
Por los fundamentos antes expuestos, se confirma en su totalidad la sentencia del Tribunal de Primera Instancia aquí objetada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 98 DTA 25
1. No está en controversia que pasada la mitad del segundo término García y Duprey renunciaron como delegados, y otros delegados suplentes los sustituyeron. Luego, García y Duprey fueron candidatos para delegados y fueron electos a tal posición por tercera vez.